J-S33010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ESWIN ROLANDO GARCIA ISPACHE | : | |
| | : | |
| Appellant | : | No. 1009 EDA 2021 |

Appeal from the PCRA Order Entered April 15, 2021
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0003304-2019

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                **FILED DECEMBER 15, 2021**

Eswin Rolando Garcia Ispache appeals from the denial of his Post Conviction Relief Act ("PCRA") petition.  We affirm in part, vacate in part, and remand with instructions.

The Commonwealth provided the following summary of the facts underlying Appellant's convictions at the *nolo contendere* plea hearing:

> On May 4th of 2019, the Bensalem Police responded to Cloverdale Avenue in Bensalem, Bucks County, for the report of a [sixteen]-year-old female reporting that her uncle, [Appellant], had been sexually abusing her for a number of years.
>
> When interviewed, the juvenile female reported that beginning when she was under thirteen and continuing until the present, [Appellant] had touched her breasts and vagina and had penetrated her vagina digitally without her consent and when she was under the age of thirteen.  This would happen at the residence in Bensalem, Bucks County.

> Police subsequently spoke with [Appellant]. He admitted that what he had done was wrong and that he was drinking at the time and would lose control.

Plea and Sentencing Hearing, 12/5/19, at 10-11.

The Commonwealth arrested and charged Appellant by criminal information for the years of sexual abuse perpetrated against victim, which it alleged was committed between January 1, 2011, and March 31, 2019.[1] *See* Criminal Information, 7/11/19. On December 5, 2019, Appellant entered a negotiated *nolo contendere* plea to aggravated indecent assault of a child less than thirteen years of age, corruption of minors, unlawful contact with a minor, and indecent assault of a person less than sixteen years of age. In exchange for his plea, the Commonwealth *nolle prossed* a statutory sexual assault charge. The trial court accepted Appellant's plea and issued the agreed-upon sentence of seven to twenty years of incarceration. The court also designated Appellant as a Tier III lifetime registrant pursuant to the Sexual Offender Registration Notification Act ("SORNA"). Appellant was not adjudged to be a sexually violent predator ("SVP").

Appellant did not file a post-sentence motion or a direct appeal. On July 6, 2020, Appellant filed a *pro se* petition averring that he was not awarded credit for time served between his initial date of incarceration and the date of

---

[1] The information did not allege a specific date of commission, but rather averred the underlying conduct was committed within this range as to each charge individually. *See* Criminal Information, 7/11/19.

sentencing. *See* Petition for Time Credit, 7/6/20, at 1-2. The court construed the filing as a PCRA petition and appointed counsel to represent Appellant. *See* Order, 8/17/20. Appointed counsel filed an amended PCRA petition raising the time-credit claim and challenging trial counsel's failure to advise Appellant to file an appeal challenging his SORNA registration requirements. *See* Amended PCRA Petition, 10/28/20, at 2. The Commonwealth responded, agreeing that Appellant was entitled to time credit but opposing Appellant's SORNA registration claim. *See* Answer, 11/16/20, at 3. Thereafter, the PCRA court scheduled an evidentiary hearing. *See* Order, 12/30/20.

At that hearing on March 15, 2021, the Commonwealth stipulated that Appellant was entitled to time credit. *See* N.T. PCRA Hearing, 3/15/21, at 4. Thereafter, Appellant testified that while he never asked counsel to file a direct appeal, he would have pursued an appeal if counsel had informed him about *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020) (discussing the constitutionality of Subchapter H of SORNA with respect to non-SVP registrants).[2] Trial counsel testified that he was aware of *Torsilieri* and that

---

[2] In *Torsilieri*, the defendant challenged the constitutionality of the registration requirements under Subchapter H, arguing through the introduction of expert reports that sexual offenders generally have low recidivism rates. After reviewing the defendant's evidence, the trial court found Subchapter H to be unconstitutional on several theories, including that it violated a defendant's right to due process by impairing his right to reputation. The Commonwealth appealed directly to our Supreme Court. While that appeal was pending, Appellant herein pled *nolo contendere* and was required to register for life under Subchapter H. Ultimately, the *Torsilieri*
*(Footnote Continued Next Page)*

he went over Appellant's registration requirements with him multiple times pre-plea. *See* N.T. PCRA Hearing, 3/15/21, at 34-35. However, since Appellant was set to be deported immediately following incarceration, trial counsel testified that Appellant was unconcerned about the registration requirements. Trial counsel also stated that he did not think that a direct appeal was merited. At the conclusion of the hearing, the court granted Appellant's request for time credit, but took the SORNA matter under further advisement.

Both sides submitted post-hearing briefs. In his brief, Appellant summarized the procedural history of *Torsilieri*, reiterating his earlier arguments about counsel's ineffectiveness for failing to challenge the constitutionality of SORNA and for failing to consult with Appellant about the same. *See* Brief in Support of PCRA Petition, 3/29/21, at 3-6, 8. The Commonwealth disagreed with Appellant's allegation that SORNA was unconstitutional and that an appeal challenging Appellant's registration on this ground would have been unsuccessful. *See* Commonwealth's Answer Brief, 4/5/21, at 5-9. After receiving and reviewing post-hearing briefs, the PCRA court entered an order granting Appellant's request for time credit but denying the rest of his petition. The instant timely appeal followed. Both Appellant and the PCRA court have complied with the mandates of Pa.R.A.P. 1925.

---

Court vacated the trial court's order finding Subchapter H unconstitutional and remanded for further development of the record.

- 4 -

Appellant raises the following issue for our review: "Did the [PCRA] court err in denying Appellant's [PCRA] petition where counsel was ineffective for failing to discuss with Appellant and raise constitutional challenges to SORNA and Appellant's designation as a tier III offender?" Appellant's Brief at 7.

We begin with a discussion of the pertinent legal principles. Our "review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (quoting *Commonwealth v. Hanible*, 30 A.3d 426, 438 (Pa. 2011)). This Court must "grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Commonwealth v. Dozier*, 208 A.3d 1101, 1103 (Pa.Super. 2019) (quoting *Commonwealth v. Brenner*, 147 A.3d 915, 919 (Pa.Super. 2016)). "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Pew*, 189 A.3d 486, 488 (Pa.Super. 2018) (citation omitted). Finally, we "may affirm a PCRA court's decision on any grounds if the record supports it." *Commonwealth v. Smith*, 194 A.3d 126, 132 (Pa.Super. 2018) (citation omitted).

In reviewing claims of ineffectiveness, counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise.

*Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, the petitioner must plead and prove (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. *Id*. The failure to establish any one of these prongs is fatal to a petitioner's claim. *Id*. at 113.

Appellant avers that counsel was ineffective when he failed to consult with him regarding whether he desired to challenge on direct appeal the trial court's order that he register under Subchapter H of SORNA. By way of background, the iteration of SORNA that Appellant was subjected to, known as "SORNA II," was passed in response to *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (holding that the registration provisions of the prior version of SORNA were punitive in nature), and *Commonwealth v. Butler*, 173 A.3d 1212 (Pa.Super. 2017) ("*Butler I*") (extending *Muniz* and invalidating SORNA's provisions governing SVP determinations). SORNA II divided sex offender registration into two categories, depending on the date that the underlying offense occurred.

Subchapter I applies to sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. *See* 42 Pa.C.S. §§ 9799.51 – 9799.75. Subchapter I contains less stringent reporting requirements and was recently held to be non-punitive. *See Commonwealth v. Lacombe*, 234 A.3d 602, 626-627 (Pa. 2020) (finding Subchapter I of

SORNA II was non-punitive and did not violate the constitutional prohibition against *ex post facto* laws). By contrast, Subchapter H applies to offenders who committed an offense on or after December 20, 2012. *See* 42 Pa.C.S. §§ 9799.10 – 9799.42. While our Supreme Court has held Subchapter H was non-punitive as applied to SVPs, it has not yet issued a definitive ruling regarding the constitutionality of the registration requirements as applied to non-SVPs. *See Commonwealth v. Butler*, 226 A.3d at 987 ("*Butler II*") (finding the registration provisions of revised Subchapter H applicable to SVPs constitutional); *see also Torsilieri*, *supra* at 572 (declining to reach the merits of a constitutional challenge to the registration requirements of subchapter H and remanding for further factual development of the record).[3]

Though not raised by Appellant, the question of whether Subchapter H or Subchapter I of SORNA applies to him is a crucial starting point that must be established before we can determine the merits of his claim. This Court has treated an argument that the trial court erred in requiring a defendant to register under current Subchapter H, rather than Subchapter I, as a challenge to the legality of the sentence. *See Commonwealth v. Alston*, 212 A.3d 526, 528 (Pa.Super. 2019). Importantly, a challenge to the legality of

---

[3] *Butler II* only concerned the registration provisions of revised Subchapter H applicable to SVPs. Therefore, it did not speak to the constitutionality of the tiered registration provisions Appellant was ostensibly subject to under Subchapter H. *See Commonwealth v. Torsilieri*, 232 A.3d 567, 572 n.2 (Pa. 2020) ("*Butler II*" involves provisions related to the SVP designation process, it is not relevant to Appellee, who was not designated an SVP.").

sentence can never be waived and may be raised by the Superior Court *sua sponte*. ***See Commonwealth v. Muhammed***, 219 A.3d 1207, 1211 (Pa.Super. 2019).

We have previously held that "when an appellant's offenses straddle the effective dates of Subchapters H and I of SORNA" and "the jury did not specifically find the date of the offenses," the application of Subchapter H is unconstitutional, as it "mirrors the version of SORNA found unconstitutional in" ***Muniz***. ***See Commonwealth v. Alston***, 212 A.3d 526, 530 (Pa.Super. 2019). In these circumstances, we found that the court should apply Subchapter I. ***Id***. Although this Court has not issued a published opinion applying ***Alston*** to a plea involving a range of offenses that straddle the Subchapter H and I divide, this Court has supplied persuasive authority for the proposition that ***Alston*** applies in such circumstances with equal force. ***See Commonwealth v. Hoffman***, 249 A.3d 1180 (Pa.Super. 2021) (non-precedential decision) (applying ***Alston*** to a *nolo contendere* plea after the criminal information and oral factual summary at the plea hearing averred that appellant committed indecent assault between 2006 and 2013); ***Commonwealth v. Gonzalez***, 221 A.3d 1229 (Pa.Super. 2019) (non-precedential decision) (indicating ***Alston*** applied to a guilty plea because docket and plea transcript indicated that the offenses occurred between 2001 and 2019).

Our review of the certified record makes clear that all parties proceeded from the assumption that Appellant was subject to registration under Subchapter H. Indeed, all of Appellant's post-conviction constitutional challenges have centered on Subchapter H. However, the criminal information and the Commonwealth's factual summary stated that Appellant committed his crimes between 2011 and 2019. *See* Criminal Information, 7/11/19; *see also* Plea and Sentencing Hearing, 12/5/19, at 10 (the Commonwealth reciting the offense dates as "a number of years" during its factual summary). Thus, like in *Alston*, Appellant's offense dates "straddle the effective dates of Subchapters H and I of SORNA, [and] he is entitled to the lower reporting requirements of Subchapter I." *See Alston*, *supra* at 530. Accordingly, Appellant should have been subjected to registration under Subchapter I and not Subchapter H. Mindful of this fact, we now proceed to consider the merits of his substantive claim.

Appellant does not dispute the voluntariness of his plea or that he received the sentence he negotiated with the Commonwealth. Instead, Appellant claims that his trial counsel was ineffective for failing to consult with him regarding the filing of a post-sentence motion or direct appeal concerning

his registration requirements.[4]  ***See*** Appellant's brief at 19.  The United States

Supreme Court has explained that

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  In making this determination, courts must take into account all information counsel knew or should have known.  Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issue and because such a plea may indicate that the defendant seeks an end to judicial proceedings.  Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.  Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant sufficiently demonstrated to counsel an interest in an appeal.

***Roe v. Flores–Ortega***, 528 U.S. 470, 480 (2000).  We have defined an

attorney's duty to consult as "advising the defendant about the advantages

and disadvantages of taking an appeal, and making a reasonable effort to

discover the defendant's wishes."  ***Commonwealth v. Donaghy***, 33 A.3d 12,

15 (Pa.Super. 2011).  Furthermore:

> A deficient failure on the part of counsel to consult with the defendant does not automatically entitle the defendant to reinstatement of his or her appellate rights; the defendant must . . . demonstrate that there is a reasonable probability that, but

---

[4] It is undisputed that Appellant never asked counsel to file an appeal.  ***See*** Appellant's brief at 19.  At the PCRA hearing, Appellant conceded that he never asked counsel to file a post-sentence motion or direct appeal.  ***See*** N.T. PCRA Hearing, 3/15/21, at 23.

for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.

*Commonwealth v. Carter*, 21 A.3d 680, 683 (Pa.Super. 2011) (internal quotation marks and citation omitted).

Appellant alleges that trial counsel never consulted with him about filing a direct appeal and that he should have done so because a rational defendant in Appellant's position would have wanted to challenge the registration requirements.[5] *See* Appellant's brief at 20-21. Specifically, Appellant argues that counsel failed to inform him about *Torsilieri* and avers that a rational defendant similarly situated to himself would have wanted to file an appeal raising the issues that were being litigated in *Torsilieri* at the time of his *nolo contendere* plea.

The PCRA court agreed with the Commonwealth that Appellant's duty to consult claim lacked merit. The PCRA court found Appellant's testimony that he was unaware of what a *nolo contendere* plea was or what SORNA meant incredible. *See* PCRA Opinion, at 10. Instead, the court was persuaded by counsel's testimony that he had multiple conversations with Appellant about his lifetime registration as a Tier III offender. *Id*. at 12. Appellant received the exact sentence he bargained for and "even acknowledged that his

_____

[5] Appellant does not contend that he reasonably demonstrated to counsel that he was interested in appealing. Accordingly, we do not discuss the alternative avenue to relief on a duty to consult claim outlined in *Roe v. Flores–Ortega*, 528 U.S. 470, 480 (2000).

registration requirements were a smaller concern [at the time of his plea and sentencing] as opposed to his sentence of incarceration." *Id*. (citing N.T. PCRA Hearing, 3/15/21, at 38-39). Further, the PCRA court maintains that Appellant's Tier III designation as a SORNA registrant was then, and remains today, a constitutional and lawful sentence. *Id*. at 12. Thus, the court found that a challenge to Appellant's registration at the time of his plea was meritless and would have constituted a frivolous appeal. *Id*. at 11. We find record support for the PCRA court's conclusions.

First, this was not a case where a defendant stood before the court with little understanding of what might happen next. *See Commonwealth v. Rivera*, 154 A.3d 377, 378 (Pa.Super. 2017) (finding whether an appellant received the sentence he bargained for was a highly relevant factor in the *Flores-Ortega* inquiry). Instead, the PCRA court credited trial counsel's testimony that he had three discussions with Appellant, in which he detailed every aspect of Appellant's eventual *nolo contendere* plea, including his SORNA registration requirements, and answered all of Appellant's questions. *See* PCRA Hearing, 3/15/21, at 32-35. Ultimately, Appellant received the sentence he bargained for as a part of the plea. *See Commonwealth v. Montalvo*, 205 A.3d 274, 290 (Pa. 2019) (reiterating the established principle that we are bound by the PCRA court's credibility findings where, as here, they are supported by the record).

Additionally, our Supreme Court has instructed us to consider "all information counsel knew or should have known" when determining whether a rational defendant would have wanted to appeal. *See Flores-Ortega*, *supra*. In *Commonwealth v. McDermitt*, 66 A.3d 810 (Pa.Super. 2013), we found no duty existed to consult about a direct appeal, where the defendant pled no contest, received a lenient sentence, and was voluntarily proceeding with deportation. Like in *McDermitt*, Appellant was going to be deported upon his release from prison.[6] Accordingly, given how unlikely it was that Appellant would ever register as a sexual offender, Appellant and counsel were more concerned about deportation and the length of Appellant's incarceration. Appellant did not indicate any confusion or surprise during the plea or sentencing portion of the sentence. Nor did Appellant attempt to contact counsel after sentencing.

Finally, Appellant has not presented a "nonfrivolous ground for appeal." *See Flores-Ortega*, *supra* at 480. Appellant allegedly wished to challenge

---

[6] Appellant's deportation status is not discussed in detail by either party or the court. At the plea hearing, trial counsel presented the fact of Appellant's deportation as a forgone conclusion. *See* N.T. Plea and Sentencing Hearing, 12/5/19, at 10. The record does not reveal where Appellant is in the deportation process. However, Appellant's aggravated assault against a minor conviction likely amounts to an "aggravated felony" under federal law, which would result in automatic deportation upon his release from prison. *See* 8 U.S.C. § 1101(a)(43)(a); 1227(a)(2), 1228(A)(3)(a) (defining aggravated felony and providing for deportation of an alien convicted of an aggravated felony, an offense carrying a presumption of deportability on an expedited basis).

- 13 -

the constitutionality of SORNA based on the **_Torsilieri_** case. However, **_Torsilieri_** only applies to offenders required to register under Subchapter H. **_See Torsilieri_**, **_supra_** at 581 n.16 ("In **_Lacombe_**, we are reviewing a trial court's declaration of Subchapter I's provisions as punitive and thus, as an unconstitutional violation of the _ex post facto_ clause, whereas, in the case at bar, **we consider only Revised Subchapter H**.") (emphasis added). As explained above, Appellant is entitled to the lower reporting requirements of Subchapter I.

Further, even if we were to apply Appellant's same arguments to a constitutionality challenge of Subchapter I, no nonfrivilous grounds exist that would have required counsel to consult Appellant about a direct appeal. As mentioned above, in **_Lacombe_**, **_supra_** at 606, our Supreme Court found:

> Subchapter I does not constitute criminal punishment, and the _ex post facto_ claims forwarded by [the defendants] necessarily fail. **_See Muniz_**, 164 A.3d at 1208 ("Our decision regarding violation of [the _ex post facto_] clause depends on a determination of whether SORNA's retroactive application to [**_Muniz_**] constitutes punishment.").

**_Lacombe_**, **_supra_** at 626-27. Thus, a challenge to the constitutionality of Subchapter I would have been frivolous.

Given Appellant's belief he was likely to be deported and the state of the law, Appellant has failed to persuade us "that a rational defendant would [have] want[ed] to appeal" his SORNA registration in these circumstances. **_See Flores-Ortega_**, **_supra_** at 480. However, in light of the foregoing discussion, we must vacate the portion of Appellant's judgment of sentence

regarding his reporting requirements and remand to the PCRA court so that it can instruct Appellant on his proper registration and reporting requirements. We affirm the PCRA court's denial of the PCRA petition in all other respects.[7]

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2021

---

[7] To the extent that Appellant still wants to challenge his registration requirements, he may be able to do so outside the confines of the PCRA. **See Commonwealth v. Lacombe**, 234 A.3d 602, 617 (Pa. 2020) (expressly declining "to find the PCRA, or any other procedural mechanism . . . the exclusive method for challenging sexual offender registration statutes."). **see also Commonwealth v. Moose**, 245 A.3d 1121, 1128-29 (Pa.Super. 2021) (applying **Lacombe** and concluding that an appellant was not required to challenge his registration requirements under the PCRA).